UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD McGILLEN,

        Plaintiff,

                                          Case Number 08-12863-BC

v.                                         Honorable Thomas L. Ludington

AMEX ASSURANCE CO., AMERICAN
EXPRESS, HEALTH EXTRAS, and
FEDERAL INSURANCE CO.,

        Defendants.

_____/

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, DISMISSING THE COMPLAINT WITHOUT PREJUDICE, DENYING PLAINTIFF'S MOTION FOR RULE 56(F) DISCOVERY, AND PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT

Plaintiff Ronald McGillen filed a four-count, amended complaint [Dkt. # 20] against Defendants Amex Assurance Co., American Express, Health Extras, and Federal Insurance Co. on October 3, 2008. Each of the four counts is identical, except for the defendant to which it refers. In each count, Plaintiff claims that he was insured by a disability policy with that defendant, that the defendant contracted with Plaintiff to provide a lump-sum payment and other financial benefits to Plaintiff if he became disabled, that Plaintiff became disabled, and that the defendant denied his claim in breach of the contract. The complaint does not describe Plaintiff's injury or any other details related to the claim that he filed. Plaintiff seeks a judgment awarding him all benefits allowable under the contract.

Now before the Court is Defendant Federal Insurance Co.'s ("Federal") motion to dismiss or recast as a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff filed a response [Dkt. # 28] on November 3, 2008, and Federal filed a reply

[Dkt. # 31] on November 13, 2008. Additionally before the Court is Plaintiff's motion for Rule 56(f) discovery [Dkt. # 33] filed November 18, 2008. Federal filed a response [Dkt. # 36] on December 2, 2008. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, Defendant's motion to dismiss will be granted, to the extent that Plaintiff is allowed an opportunity to file an amended complaint stating his claims under ERISA. Plaintiff's motion for Rule 56(f) discovery will be denied.

I

In his complaint, Plaintiff alleges that in December 2004, he was insured through disability policy number 64752611, issued by Federal, and that at that point, he became disabled. Subsequently, he made a claim for lump sum disability benefits from Federal. Plaintiff's response to Federal's motion to dismiss somewhat calls into question those basic facts. There, Plaintiff states that Plaintiff was injured in December 2005 rather than 2004.

Plaintiff states that he was a farmhand and that he worked at a small farm owned by James Hasso. Plaintiff attached to his response to Federal's motion an affidavit of Hasso, in which Hasso states that he sells produce grown on his farm locally, throughout mid-Michigan. Hasso also states that he took out a disability policy for Plaintiff sometime in 2004 or 2005, that he made a "lump-sum" payment of approximately $80-90 for a year's worth of insurance coverage for Plaintiff, that he was able to renew the policy on a yearly basis, and that he did not provide any other benefits to Plaintiff beyond compensation for his work.

According to Federal's motion to dismiss, and plan documents attached as exhibits, Plaintiff seeks benefits under an "Accidental Permanent Total Disability and Accidental Loss of Life" insurance policy from American Express and underwritten by Federal. The plan is effectively a catastrophic injury policy, which provides up to $1.5 million in benefits, payable in a lump-sum, for certain combinations of injuries, including loss of life, loss of speech, loss of hearing, loss of a hand, foot or sight of an eye, and loss of a thumb and index finger on the same hand, with certain limitations and exclusions.

On April 30, 2004, American Express sent an enrollment letter to Hasso, confirming that Hasso had obtained accidental disability coverage for "you and any employees you've enrolled." On the same date, American Express sent a similar enrollment letter to Plaintiff, confirming his "employer's decision" to enroll him in the plan. The correspondence further advised that "[y]our coverage will terminate if your employment ceases."

The Benefit Plan Description provides the major provisions of the Federal policy. The Certificate of Insurance Declarations included in the plan description indicates that "insured persons" are "all eligible individual Employees of an Employer-Employee Group of the Policyholder for whom the Employee elects Individual coverage and pays the required premium." The definitions page further defines an "insured person" as a person "(1) who elects coverage; or (2) for whom coverage is elected, and on whose behalf premium is paid."

The section of the plan description addressing benefits amounts provides:

> If Accidental Bodily Injury causes the Primary Insured Person to have a Permanent Total Disability that is continuous during the period for which Permanent Total Disability Benefit Amounts are payable, after the Elimination Period we will pay the Permanent Total Disability Lump Sum Benefit Amount shown in the Declarations.

The Certificate of Insurance Contract included in the plan description provides:

> We will pay the applicable Benefiit Amount if an Accident results in a Loss not otherwise excluded. The Accident must result from a covered Hazard and occur while this policy is in force. The Loss must occur within one (1) year of the Accident.

The Certificate of Insurance Contract identifies the effective and termination dates of individual coverage and specifies the exclusions, including, inter alia, criminal activity and pre-existing conditions. It also provides definitions for many terms used in the plan description, including "accident," "benefit amount," "elimination period," "hazard," "insured person," "loss of use," "permanent total disability," "loss," and "policyholder."

The section of the plan description addressing common policy conditions provides that claim notice must be given "within twenty days after the occurrence of commencement of any Loss covered by this policy or as soon as reasonably possible." It further provides that "[f]or claims involving disability, written Proof of Loss must be given . . . within thirty days after commencement of the [Liability] period." The plan description indicates that:

> When we receive notice of a claim we will send the Insured Person . . . within fifteen (15) days, forms for giving us Proof of Loss. If the Insured Person . . . does not receive the forms, the Insured Person . . . should send us a written description of the Loss. This written description should include information detailing the occurrence, type and extend of the Loss for which the claim is made.

The plan description indicates that the Policyholder is responsible for collecting and remitting all premium payments due under the policy. Finally, the plan contains a phone number for customer service.

II

Federal moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Plaintiff's claims are preempted by ERISA. Rule 12(b)(6) motions can be raised in any pleading, by motion, or at trial. Fed. R. Civ. P. 12(h)(2). To survive

a Rule 12(b)(6) motion, a plaintiff's complaint "must contain either direct or inferential allegations respecting all the material elements [of the claim] to sustain a recovery under some viable legal theory." *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443-44 (6th Cir. 2007).

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). If matters outside the pleadings are presented and not excluded by the court in a 12(b)(6) motion, the motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d). However, if a plaintiff does not attach to the complaint a written instrument upon which the action is premised, the defendant may introduce the pertinent exhibit without converting a motion to dismiss to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (finding that plan documents not attached to a complaint alleging claims under ERISA were properly considered on a motion to dismiss because the complaint incorporated them by reference).

III

ERISA applies to any "employee benefit plan" if it is "established or maintained" by any employer or employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a)(1)-(3). One form of employee benefit plan is an "employee welfare benefit plan." *Id.* § 1002(3). An "employee welfare benefit plan" is defined as:

> Any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance . . . benefits in the event of sickness, accident, disability, death or unemployment. . . .

*Id.* § 1002(1). If the policy at issue is an ERISA plan, then a plaintiff's claims under state law are preempted and federal common law will determine the plaintiff's recovery. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56-57 (1987).

"The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996). The Sixth Circuit has established a three-step factual inquiry to determine whether a plan is an ERISA plan:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA.
>
> Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits."
>
> Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Id.* at 434-35 (internal citations omitted).

With respect to step one, the Department of Labor ("DOL") "safe harbor" regulations exclude an employee insurance policy from ERISA coverage if all four of the following criteria are met:

> (1) the employer makes no contribution to the policy;
>
> (2) employee participation in the policy is completely voluntary;
>
> (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and
>
> (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Thompson*, 95 F.3d at 435 (citing 29 C.F.R. § 2510.3-1(j), and *Fugarino v. Hartford Life and Accident Ins. Co.*, 969 F.2d 178, 184 (6th Cir. 1992)).

Under the first step of the Sixth Circuit's three-step factual inquiry, Federal contends that the policy does not meet at least two of the DOL "safe harbor" regulations. First, Federal argues that the policy does not meet the second criteria because Plaintiff's participation in the plan was not voluntary when Hasso enrolled Plaintiff. Second, Federal argues that the policy does not meet the third criteria because Hasso did more than publicize the policy when he took the affirmative step of enrolling Plaintiff.

In his response, Plaintiff did not challenge Federal's arguments regarding the "safe harbor" regulations. Plaintiff did not dispute that his participation was not voluntary, nor did he dispute that Hasso did more than merely publicize the policy. Additionally, Hasso's affidavit, which Plaintiff attached to his response, indicates that Hasso paid approximately $80-90 for a disabilty policy for Plaintiff. Accordingly, the plan does not meet the first requirement of the "safe harbor" regulations, which requires that the employer "makes no contribution to the policy."

However, for ERISA preemption to occur, there still must be an ERISA "plan," which is "established or maintained" by the employer. When the "bare purchase of insurance" is at issue, the failure to meet the safe harbor requirements is not conclusive of whether there is an ERISA plan, "although it may be evidence of the existence of an ERISA plan." *Fugarino*, 969 F.2d at 184.

Under the second and third steps of the Sixth Circuit's three-step factual inquiry, Federal contends that there was a "plan" because, "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Thompson*, 95 F.3d at 435 (quoting *Int'l Res., Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991)). Federal contends that this information is ascertainable from the plan documents, including the enrollment letters. In *Arbor Health Care Co.*

*v. Sutphen Corp.*,181 F.3d 99 (table), 1999 WL 282667, at * 5 (6th Cir. Apr. 30, 1999), the court found, without significant analysis, that the insurance coverage in question was a "plan" because the defendant's employees could "ascertain all relevant coverage information by examining the plan documents." The court also found that the defendant-employer "established or maintained the plan" because he paid eighty-percent of the premiums "with the intent of providing benefits" to the covered employees." *Id.*

In contrast, Plaintiff argues that the policy at issue is not a "plan" under ERISA, 29 U.S.C. § 1002(1), because it does not involve an "ongoing administrative scheme to administer the plan's benefits." *Sherrod v. General Motors Corp*, 33 F.3d 636, 638 (6th Cir. 1994). Plaintiff contends that Hasso did not establish such a scheme because he simply purchased a disability policy for Plaintiff with a single lump-sum payment. Plaintiff contrasts this situation with *Stirton v. Michigan Tooling Association*, No. 05-40378, 2006 WL 2788120, at *3 (E.D. Mich. Sept. 26, 2006), in which the court found that the health benefit policy implicated an ongoing administrative scheme because the defendant-employer was required to make "continuing payments over time" to the insurance carrier, but distinguished it from the plaintiff's pension policy which involved "just writing a single check." *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987) (holding that a state statute requiring employers to provide a one-time severance check to employees in the event of a plan closing - "the occurrence of a single contingency that may never materialize" - was not a "program for processing claims and paying benefits" and, accordingly, was not subject to ERISA requirements).

Federal argues in its reply that the fact that the premium payment was made in a lump sum is irrelevant as to whether there was an ongoing administrative scheme because when a claim is

made, benefits need to be determined and paid through the claims procedure. *See Hughes v. Zurz*, Nos. 07-3102, 07-3211, 2008 WL 4488891, at *8 (6th Cir. Oct. 6, 2008) (concluding that a "claims procedure . . . in itself constitutes an ongoing administrative scheme"). The fact that an employer delegates administrative obligations to the insurer does not take the policy out of ERISA coverage. *Liberty-Owens-Ford Co. v. Blue Cross & Shield Mut. of Ohio*, 982 F.2d 1031, 1034 (6th Cir. 1993) (stating that "employee welfare benefit plans may be created through the mere purchase of a group health insurance policy when the owner does not retain control, administrative power, or responsibility for benefits"); *Int'l Res.*, 950 F.2d at 297 (rejecting the proposition that an employer who simply obtains a group health insurance policy has not established or maintained an employee welfare benefit plan because "[t]he ERISA definition of 'employee welfare benefit plan' specifically allows that ERISA plans may be established 'through the purchase of insurance or otherwise' ") (quoting 29 U.S.C. § 1002(1)). Additionally, a plan is ongoing in nature even when a lump-sum benefit payment is required because other employees may become eligible for benefits. *Hughes*, 2008 WL 4488891, at *8.

The Federal policy, purchased by Hasso for Plaintiff's benefit, is a "plan" within the meaning of ERISA, which was "established or maintained" by Hasso. The policy was "established or maintained by Hasso" because, at a minimum, he paid an $80-90 premium to enroll Plaintiff. The policy is a "plan" under ERISA because, based on the information contained in the plan documents, "a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Thompson*, 95 F.3d at 35 (quoting *Int'l Res.*, 950 F.2d at 297).

As previously outlined, the benefit plan documents describe the major provisions of the

Federal policy. The documents describe who insured persons are under the plan and define the coverage period. The documents describe generally when benefits will be paid and specifically defines exclusions and significant words such as "accident," "benefit amount," and "permanent total disability." The documents provide that claim notice must be given within twenty days or as soon as reasonably possible, that proof of loss must be provided within thirty days of the liability period, and that the claimant will be provided with a form for providing proof of loss. The plan documents indicate that the Policyholder is responsible for collecting and remitting all premium payments due under the policy. Finally, the plan contains a phone number for customer service.

Plaintiff's final substantive argument is that the policy is not governed by ERISA because Hasso was not engaged in "commerce," 29 U.S.C. § 1003(a), when Hasso only sold his produce locally. Under ERISA, "commerce" is defined as " . . . trade, traffic, commerce, transportation, or communication between any State and any place outside thereof." *Id.* § 1002(11). Neither this Court nor the Sixth Circuit Court of Appeals has addressed the application of ERISA to agricultural workers. However, the Court adopts the reasoning of the Ninth Circuit in *Winterrowd v. David Freedman and Co., Inc.*, 724 F.2d 823, 825 (9th Cir. 1984), in which the court concluded that "ERISA does not exempt agricultural workers from its coverage" because "[i]t is unquestionable that agriculture is an activity 'affecting commerce.' " *Id.* (stating that "[t]he proposition is plain on the face of the statute and is apparent both from legislative history and subsequent administrative interpretation of the Act" and citing *Wickard v. Filbur*, 317 U.S. 111 (1942)). The court further reasoned that if "Congress had intended to exclude agricultural workers' pension plans form coverage under ERISA, it could have done so explicitly." *Id.* (highlighting that governmental, church, workers compensation, extraterritorial nonresident alien, and unfunded excess benefits plans

are excluded under 29 U.S.C. § 1003(b)). Accordingly, Hasso was engaged in "commerce" within the meaning of ERISA.

Finally, the Court will address Plaintiff's contention, which he raises both in his brief in opposition to Federal's motion and a separate Rule 56(f) motion, that Federal's motion is premature and should be denied due to the fact that discovery has not yet taken place. Plaintiff asserts that he needs to take the deposition of his employer and to obtain documents before a determination can be made regarding whether the policy at issue is governed by ERISA.

However, Plaintiff does not specify with any level of detail any material information he would expect to learn during discovery. Additionally, while Plaintiff asserts the need to depose his employer, he has already provided Hasso's affidavit to the Court, in which Hasso states, among other relevant things, that he paid $80-90 for the insurance policy at issue. Plaintiff has already taken the plan out of the scope of the "safe harbor" regulations, and the details of the plan can be ascertained from the plan documents. Any facts that could materially affect the analysis would already be known to Plaintiff. Thus, there is no justification for further factual development.

IV

Accordingly, it is **ORDERED** that Defendant's motion to dismiss [Dkt. # 23] is **GRANTED**, and Plaintiff's amended complaint [Dkt. # 20] is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that Plaintiff's motion for Rule 56(f) discovery [Dkt. # 33] is **DENIED**.

It is further **ORDERED** that Plaintiff is **PERMITTED** to file an amended complaint eluciding more precisely the nature of the ERISA claim and the relief sought, on or before **January 5, 2009**.

                                        s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

Dated: December 15, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2008.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS

---